IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DONALD R. LOVELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-254 |
| | ) | |
| v. | ) | Judge Sharp |
| | ) | Magistrate Judge Bryant |
| CHAMPION CAR WASH, LLC, and | ) | |
| TIM JONES, individually, | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Donald R. Lovell files this Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment against Defendant Champion Car Wash, LLC.

1. After working as a manger for Defendant Tim Jones' father's company, National Car Wash, for several years, Mr. Lovell worked as a car wash manager for Defendant Champion Car Wash from October 2007 until Defendant discharged him on or about June 19, 2011. (Jones Dep. 37-46, 89-90, 94).

   **RESPONSE:**

2. Defendant Jones is the owner and President of Defendant Champion. (Jones Dep. 11, 18-19). At the time of Lovell's discharge Bennie Lay was Defendant's Operations Manager. (Jones Dep. 20, 24-25, 28, 41).

   **RESPONSE:**

3. Defendant has five car washes in the Nashville and Gallatin, Tennessee, area. (Jones Dep. 25-26). At the time of his discharge Lovell worked as an evening shift site attendant at the 6303 Charlotte Pike location. (Lovell Dep. 29-30).

**RESPONSE:**

4. Defendant has two shifts at its car washes, the "morning shift" and the "evening shift." The morning shift is from 7:30 a.m. to 1:00 or 2:00 p.m. and the evening shift is from 1:00 or 2:00 p.m. to 8:00 p.m. (Jones Dep. 25, 31).

**RESPONSE:**

5. Jones was aware that Lovell has had a heart condition his entire adult life and that he had multiple surgeries on his hip and total hip replacement surgery during his employment with Defendant. He testified:

> I know that he had – when he was 18 he had a problem with a staph infection getting in his heart and he had to have a valve replaced. And I know he's been on Coumadin and other blood thinners to keep his blood thin. And I know that his hip condition flared up on him in 2009, and he had to have that hip replaced. Upon his last surgery that he had in December of 2010, I know that he developed some heart problems while he was in the hospital.

(Jones Dep. 54; Lovell Dep. 11, 21-23, 26-28, 36, 41, 69-70). Jones also knew about "all the pain and everything he was going through" and that Lovell was seeing a both a cardiologist and an orthopedic surgeon. (Jones Dep. 54-55, 74).

**RESPONSE:**

6. In mid-June 2011, Lovell requested a transfer to an available morning shift job at Defendant's Bellevue location as a reasonable accommodation of his medical condition. (Jones Dep. 56-58, 70-71, 74-75, 77-78; Lovell Dep. 31-33, 38, 57-59, 66-71).

**RESPONSE:**

7. The 6303 Charlotte Pike location where Lovell worked at the time had no air conditioning anywhere. (Jones Dep. 58).

**RESPONSE:**

8. The Bellevue location, however, had air conditioning in the "dog wash bay" and several restaurants around it. (Jones Dep. 57; Lovell Dep. 35, 43-44, 81-82).

**RESPONSE:**

9. Jones denied Lovell's request for the available morning shift job at Bellevue and gave the job to Page Drake, a nondisabled, less senior employee who had not requested reasonable accommodation or opposed disability discrimination. (Jones Dep. 77-79, 127).

**RESPONSE:**

10. Jones testified, "we were concerned about [Lovell] physically being able to do the job . . . ." (Jones Dep. 60).

**RESPONSE:**

11. On June 17, 2011, Lovell provided Jones a note from his physician supporting his request for a transfer to the morning shift and stating, "Due to cardiomyopathy he should avoid heat of day due to risk of dehydration." (Jones Dep. 76, 81, Ex. 7).

**RESPONSE:**

12. Jones admitted that the term, "heat of day" as used in the doctor's note was "not very clear." (Jones Dep. 82).

**RESPONSE:**

13. Nevertheless, Jones 1) did not seek any clarification from Lovell's doctor about what he meant when he wrote the note, and 2) did not give Lovell a chance to obtain clarification as to what his doctor meant. (Jones Dep. 82, 93).

**RESPONSE:**

4

14. Nor did Jones advise Lovell that he needed additional information from him or his doctor concerning any work restrictions or limitations on his activities. (Jones Dep. 82).

**RESPONSE:**

15. Nor did Jones engage in the ADA-mandated, good-faith interactive process designed to identify reasonable accommodations of Lovell's impairment even though Lovell had requested a transfer to an available morning shift job as such an accommodation. (Jones Dep. 82-83, 56-58, 70-71, 75).

**RESPONSE:**

16. Instead, Jones "interpreted" the doctor's note without consulting the doctor or Lovell as to what it meant or, moreover, to obtain additional information as to Lovell's actual medical condition. (Jones Dep. 91, 94). Even though the words "heat of day" were "not very clear" to him, he "interpreted" them to mean that Lovell could not perform his job "during any heat that may exist at any point during the day." (Jones Dep. 91, Ex. 10).

**RESPONSE:**

17. Jones then made the decision to discharge Lovell on June 17, typed a letter stating his reason for doing so on June 18, and presented it to and discharged Lovell on June 19, 2011. (Jones Dep. 89-90, 94, Ex. 10).

5

> **RESPONSE:**

18. Jones testified that when Lovell gave him his doctor's note on June 17, 2011, Jones "was worried, scared" and, "I was just scared because I had an employee that had given me this note. And I'm going, oh, my goodness, what if he keels over? What am I going to do?" (Jones Dep. 122, 124).

> **RESPONSE:**

19. At the time that he discharged Lovell, Jones gave Lovell a letter dated June 18, 2011, that Jones had prepared himself. (Jones Dep. 89-90, 93-94, Ex. 11, Resp. to Request for Admission Nos. 4-5). The letter stated in pertinent part:

> I take health issues seriously, particularly heart related issues. Since I now have a doctor's note in my possession, liability for your heart issue is now passed along to me. If you got overheated while working at Champion Car Wash, and it caused further damage or injury to your heart, I would be liable and open to a lawsuit. . . . Since you cannot perform your job duties as needed, I am going to have to release you, for medical reasons, from employment at Champion Car Wash.

(Jones Dep. 89-91, Ex. 10).

> **RESPONSE:**

20. Jones verified under oath that "everything in [his] June 18 letter [was] true and complete and correct to the best of [his] knowledge, information and belief." (Jones Dep. 115-16).

**RESPONSE:**

21. Jones' "perception was that [Lovell] could not physically keep that car wash and perform the job duties at that car wash." (Jones Dep. 92).

**RESPONSE:**

22. Further, Operations Manager Lay gave a signed, handwritten statement on or about July 1, 2011 (see facsimile header), stating that Lovell "was released because of a medical condition" and "So for medical reasons and to avoid a Law-suit against the company Mr. Lovell was released." (Jones Dep. 98-99, Ex. 12). Lay also "[a]ttach[ed] a copy of Mr. Lovell's [June 18, 2011] release letter" from Jones to his signed statement. (Jones Dep. Ex. 12).

**RESPONSE:**

23. As of Jones' deposition on August 14, 2012, Defendant had no written reasonable accommodation or anti-disability discrimination policies in place. Additionally, Jones did not know what a "reasonable accommodation" is and had made no efforts to make himself or Defendant's employees aware of the requirements of the ADA. (Jones Dep. 35-36).

**RESPONSE:**

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that I electronically filed and served this Statement of Undisputed Material Facts using the Court's CM/ECF system upon Richard J. Braun, Braun & Associates, PLLC, 501 Union Street, Suite 500, Nashville, Tennessee 37219 on February 18, 2013.

s/Douglas B. Janney III
Douglas B. Janney III

8